982 A.2d 469 (2009)
410 N.J. Super. 389
STATE of New Jersey, Plaintiff-Respondent,
v.
Joseph ECKERT, Defendant-Appellant.
DOCKET NO. A-0216-08T4
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 2009.
Decided November 16, 2009.
*471 Levow & Associates, P.A., for appellant (Evan M. Levow, Cherry Hill, of counsel and on the brief; David S. Bradley, on the brief).
Sean F. Dalton, Gloucester County Prosecutor, attorney (Lloyd D. Henderson, Assistant Prosecutor, on the brief).
Before Judges LISA, BAXTER and ALVAREZ.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal requires us to decide a sentencing issue concerning the interplay between the driver's license suspensions that are required following a conviction for refusal to submit to a breath test, N.J.S.A. 39:4-50.4a, and for driving while intoxicated (DWI), N.J.S.A. 39:4-50(a), when, by virtue of the "step-down" provisions of the DWI statute, the DWI conviction is treated as a first offense,[1] thereby permitting a license suspension of three months.[2] In the municipal court, the parties agreed that defendant would plead guilty to both DWI and refusal, but the refusal charge would merge with the DWI offense, and sentence would therefore be imposed only on the DWI. No specific agreement was reached on the length of the driver's license *472 suspension to be imposed; at sentencing, the municipal court judge imposed a seven-month license suspension, even though the step-down provision of the DWI statute entitled defendant to a three-month license suspension. The Law Division, in a trial de novo, did likewise. Thus, we are called upon to decide whether a refusal conviction can be merged with a DWI conviction, or whether a separate sentence is the only permissible result where a defendant pleads guilty, or is found guilty, of both.
We reject defendant's argument that because the refusal conviction was merged with his DWI conviction, the refusal conviction "should have been of no moment," and the Law Division was permitted to impose only the three-month license suspension applicable to his DWI conviction. For the following reasons, we conclude that a refusal conviction cannot be merged with a DWI conviction: 1) although the two statutes have some commonality of operative facts, each one requires proof of an element not required by the other; 2) as evidenced by the specific language of N.J.S.A. 39:4-50.4a(a), the Legislature expressly permitted the driver's license suspension applicable to a first conviction for refusing a breath test to be made concurrent with, or consecutive to, any revocation imposed for a DWI conviction, thereby evincing a legislative intent to prohibit the merger of the refusal conviction with the DWI conviction; and 3) the approach urged by defendant runs afoul of the Supreme Court's "Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey."[3] Because we conclude that the merger of the two offenses was improper, we reverse and remand for further proceedings.

I.
On May 14, 2008, defendant Joseph Eckert entered guilty pleas to the charges of driving while intoxicated, N.J.S.A. 39:4-50, and refusal to submit to a breath test, N.J.S.A. 39:4-50.4a, in the Mantua Township Municipal Court. Pursuant to an agreement negotiated by defendant and the State, and accepted by the court, the parties agreed that the refusal and various other motor vehicle offenses would be merged with the DWI,[4] and that the sentence to be imposed on the refusal conviction would merge with the sentence to be imposed for the DWI. As we understand the record, there was no agreement reached on the length of the driver's license suspension that would be imposed.
Immediately after accepting defendant's guilty pleas to the DWI and refusal charges, the municipal court judge proceeded to sentencing. He merged the refusal violation with the DWI conviction, and imposed sentence on the DWI. In addition to the imposition of appropriate fines and other penalties, he suspended defendant's driver's license for a period of seven months, even though the step-down provision of the DWI statute entitled defendant to a three-month suspension. The court insisted on imposing the statutorily-required seven-month driver's license suspension for refusal to submit to a breath test,[5] reasoning that the Legislature did *473 not intend "to give [defendant] as a step down second offender less than what a first offender" would receive.
On appeal to the Law Division in a trial de novo, the judge considered defendant's motion to modify the sentence imposed in the municipal court. Defendant argued that the driver's license suspension should be changed to a three-month period of suspension, rather than the seven-month period imposed in the municipal court.
The State objected, arguing that "[y]ou can't merge a greater amount into a smaller amount. So you can't merge seven months into a sentence for three months." The State also relied upon a portion of the refusal statute that specifies, for a first refusal conviction, the driver's license revocation "may be concurrent with or consecutive to" any revocation imposed for a conviction for driving while intoxicated that arises out of the same incident. See N.J.S.A. 39:4-50.4a(a). The State asserted that had the Legislature intended to permit a refusal conviction to merge with a DWI conviction, such that the required seven-month mandatory minimum driver's license suspension for refusal would be eliminated, it would have expressly permitted such a merger; however, by limiting the available options to a concurrent or consecutive sentence for the two offenses, the Legislature expressed an intention to preserve the required seven-month period of driver's license suspension for a first refusal conviction.
In imposing the sentence, the Law Division judge rejected the arguments advanced by defendant, reasoning that imposing only a three-month license suspension would be tantamount to "a step-down provision for refusing," which the Legislature chose not to establish. The judge also held that "[t]o allow this defendant only to be suspended for three months would be rewarding him for refusing to comply with the [breath test], when there is no step-down for a refusal."
On appeal, defendant presents the same arguments he advanced in the municipal court and in the Law Division, asserting that "because the refusal charge was merged with the driving while intoxicated charge, [he] should have incurred a license suspension for three months."

II.
Before commencing an analysis of defendant's claims on appeal, we pause briefly to discuss the policy objectives the Legislature sought to accomplish when it enacted the refusal statute, N.J.S.A. 39:4-50.4a. As the Court observed in In re Kallen, 92 N.J. 14, 28, 455 A.2d 460 (1983), there are few matters in which the public has a "stronger interest" than in "the immediate removal of drunk drivers from the highways."[6] "New Jersey's DWI statutes were enacted `to curb the senseless havoc and destruction caused by intoxicated drivers.'" State v. Widmaier, 157 N.J. 475, 487, 724 A.2d 241 (1999) (quoting State v. Tischio, 107 N.J. 504, 512, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988)). "To facilitate effective enforcement of the DWI statutes, the Legislature passed the `Implied Consent Law,' N.J.S.A. 39:4-50.2, *474 which provides that any person who is arrested for driving while under the influence of alcohol has an affirmative obligation to submit to a breath[] test." Ibid. Indeed, the Legislature viewed the Implied Consent Law as one of the State's principal weapons in its struggle to combat drunk driving. Id. at 488, 724 A.2d 241.
Of particular relevance to the issue before us now, the Court commented that by devising penalties that "are not insignificant" when a driver refuses to submit to a breath test, the Legislature "sought to ensure that the Implied Consent Law [would be] a strong disincentive to driving while intoxicated." Id. at 488-89, 724 A.2d 241. In fact, the Court noted that "except for the jail sentences authorized by the DWI statute[], N.J.S.A. 39:4-50, the sanctions for violating the refusal statute are substantially similar to those imposed for violation of the DWI statute." Id. at 499-500, 724 A.2d 241. Thus, by providing a strong disincentive to withholding consent to a breath test, the Implied Consent Law, N.J.S.A. 39:4-50.2, and the refusal statute, N.J.S.A. 39:4-50.4a, together advance New Jersey's public policy of preventing drunk driving.
To ensure that this public policy of encouraging consent to a breath examination was promoted, and not frustrated, the Court, in 1990, adopted a sweeping change in the way plea agreements had been negotiated in drunk driving prosecutions. Entitled "Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey" (Guidelines),[7] the policy prohibits plea agreements in cases where the defendant is charged with driving while intoxicated. As specified in Guideline 4, "No plea agreements whatsoever will be allowed in drunken driving ... offenses." The Guidelines then proceed to prohibit specific practices, some of which are not relevant to the issue before us. One practice the Court explicitly prohibited, and which is distinctly relevant to the issue here, is a prohibition on the dismissal of a refusal charge in connection with a first drunk driving violation. In relevant part, Guideline 4 provides:
If a defendant is charged with a second or subsequent offense of driving while under the influence of liquor or drugs (N.J.S.A. 39:4-50) and refusal to provide a breath sample (N.J.S.A. 39:4-50a) arising out of the same factual transaction, and the defendant pleads guilty to the N.J.S.A. 39:4-50 offense, the judge, on recommendation of the prosecutor, may dismiss the refusal charge. A refusal charge in connection with a first offense N.J.S.A. 39:4-50 charge shall not be dismissed by a plea agreement, although a plea to a concurrent sentence for such charges is permissible.

[Guidelines, supra, at 2307 (emphasis added).]
As the language of Guideline 4 makes clear, the Court specifically permits the dismissal of the refusal charge where the defendant is charged with a second or subsequent DWI violation, but expressly prohibits the dismissal of the refusal charge where it is charged in connection with a defendant's first DWI offense. Defendant argues that the three-month license suspension he sought in the municipal court, and again in the Law Division, does not violate the Guidelines' ban on plea agreements in drunk driving cases.
In particular, he maintains that merging the refusal conviction into the DWI conviction preserves the refusal conviction, and does not run afoul of the Court's prohibition on the dismissal of the *475 refusal violation in instances of a first DWI conviction. His argument is meritless. Merging the refusal conviction with the DWI convictionwhen the resulting license suspension is only for three months, rather than the seven months required by the refusal statuteis a subterfuge that preserves the refusal violation in name only. Sentencing defendant to a three-month suspension, under the guise of merger of offenses, is, in reality, nothing more than a de facto dismissal of the refusal charge, a result that is prohibited by the Guidelines.
Indeed, the Court recognized the danger of potential circumvention of the Guidelines through the use of mechanisms such as the one defendant advocates here. In the official Comment promulgated simultaneously with issuance of the Guidelines on June 29, 1990, the Court recognized the euphemisms often used to disguise the actual plea bargain of drunk driving cases in the municipal courts. The Court commented:
Over the years, various unique practices and procedures have evolved in connection with the disposition of Municipal Court cases. Thus, it is the intent of these Guidelines to define regulated plea agreements as including every common practice that has evolved as a subterfuge for plea agreements. Therefore, for the purpose of these Guidelines, a plea agreement shall include all of those traditional practices, utilized by prosecutors and defense counsel, including "merger", "dismissal", "downgrade" or "amendment." Generally, "mergers" involve the dismissal of lesser-included or related offenses when a defendant pleads to the most serious offense.
[Official Comment to the Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey, Pressler, Current N.J. Court Rules, Appendix to Part VII at 2308 (2010) (emphasis added).]
Thus, the Court expressly prohibited the use of "merger" as a technique designed to circumvent the general prohibition in the Guidelines on plea agreements in drunk driving cases and its specific prohibition on dismissal of refusal violations for first-time DWI offenders. We thus reject defendant's contention that the "merger" he negotiated entitled him to avoid the seven-month license suspension that the Guidelines require for a violation of the refusal statute.
Moreover, as the State correctly argues, accepting defendant's argument that he was entitled to a mere three-month license suspension creates the potential for an unacceptable anomalous result. Specifically, defendant, who pled guilty to both DWI and refusal, would receive a three-month license suspension, while another driver, who pleads guilty only to refusal, would receive a seven-month suspension. We will not countenance such an irrational result.
Our conclusion that the municipal court and Law Division judges were correct when they refused to impose only a three-month suspension is strengthened by an examination of the language the Legislature chose to incorporate in the refusal statute. N.J.S.A. 39:4-50.4a(a) specifically provides that "[f]or a first offense, the revocation [of driving privileges] may be concurrent with or consecutive to any revocation imposed for a conviction under the provisions of R.S. 39:4-50[, the drunk driving statute,] arising out of the same incident."[8] The significance of such *476 a provision is clear: by choosing to permit concurrent or consecutive license suspensions for first-time refusal offenders, the Legislature insisted on the preservation of the refusal conviction. When the Legislature expressly includes one set of options as it has done here, its silence respecting a second alternative is deemed, in appropriate circumstances, to be a rejection of that other, unnamed alternative. Evans v. Atl. City Bd. of Educ., 404 N.J.Super. 87, 92, 960 A.2d 768 (App.Div. 2008) (describing the doctrine of "expressio unius est exclusio alterius" and holding that the mentioning of one or more items can be construed as a purposeful exclusion of others). We thus conclude that the Legislature, by virtue of its failure to authorize the merger of the refusal violation with the DWI conviction for first-time offenders, and its insistence that the refusal conviction be preserved by way of a concurrent or consecutive sentence, intended to forbid the very result defendant urges.
Last, but certainly not least, a conviction for refusal to submit to a breath examination cannot, as a matter of law, ever merge with a conviction for drunk driving. Two offenses will not merge when each offense requires the proof of an additional fact not required by the other, Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); State v. Dillihay, 127 N.J. 42, 48, 601 A.2d 1149 (1992); State v. Truglia, 97 N.J. 513, 520, 480 A.2d 912 (1984), unless, applying the "flexible" approach and fact-sensitive analysis the Court required in State v. Davis,[9] principles of fundamental fairness and due process would be offended by multiple prosecutions.
We turn first to Dillihay, where the Court considered the question of whether a conviction for drug distribution, N.J.S.A. 2C:35-5a(1), must merge with a conviction for drug distribution within 1,000 feet of a school, N.J.S.A. 2C:35-7. Dillihay, supra, 127 N.J. at 44, 601 A.2d 1149. After concluding that it was unclear whether the Legislature contemplated multiple punishments for the two offenses, or whether instead the Legislature sought merely to prohibit merger for sentencing purposes in order to preserve the mandatory parole ineligibility period for school-zone offenses, id. at 49-50, 601 A.2d 1149, the Court proceeded to an application of the Blockburger test. Observing first that a defendant cannot be punished twice for the "same" offense, the Court held that for purposes of both double jeopardy and merger analysis, two offenses are deemed the "same" unless "`each [offense] requires proof of an additional fact [that] the other does not.'" Id. at 50-51, 601 A.2d 1149 (quoting Blockburger, supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309).
The Court then proceeded to an analysis of whether each crime required proof of an additional fact that the other one did not. The Court determined that the State must prove "all elements" of a drug distribution offense, N.J.S.A. 2C:35-5a(1), to establish a violation of the school-zone statute. Id. at 51, 601 A.2d 1149. Therefore, the drug distribution offense under N.J.S.A. 2C:35-5a(1) "obviously does not require proof of any additional facts beyond those that establish a violation of the school-zone statute." Ibid. For that reason, the Court concluded that the two offenses are "`the same' for purposes of the Blockburger analysis," thereby precluding punishment under both statutes and requiring merger of the drug distribution offense with the school-zone offense. Ibid. Thus, when *477 proof of one offense necessarily establishes guilt on the other, the two offenses merge, and imposition of multiple punishments offends the constitutional protection against double jeopardy. Ibid.
The Court also held that New Jersey's statutory provision governing prosecutions "for related offenses" is consistent with the Blockburger analysis. Ibid. That provision, N.J.S.A. 2C:1-8(a)(1), provides that a defendant may not be convicted of more than one offense if "one offense is included in the other." The Court observed that one offense is included in the other when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Ibid. (quoting N.J.S.A. 2C:1-8(d)(1)). Under that statutory standard, the drug distribution offense was "included" within the school-zone offense because the former was established by proof of the same facts as the latter, id. at 52, 601 A.2d 1149, and would thus merge with the school-zone offense.[10] Thus, because proof of one crime necessarily established guilt on the other, the two offenses merge. Ibid.
With these principles in mind, we turn to an analysis of whether the DWI and refusal statutes are "the same." Unquestionably, the refusal statute requires the proof of a fact not required by the DWI statute, namely a deliberate refusal to supply a breath sample. Likewise, the DWI statute requires proof of a fact not required by the refusal statute. In particular, to obtain a conviction for DWI, the State must prove beyond a reasonable doubt that the defendant was operating a motor vehicle while under the influence of alcohol or other intoxicant. See N.J.S.A. 39:4-50; and State v. Dively, 92 N.J. 573, 585, 458 A.2d 502 (1983) (holding that motor vehicle offenses must be established beyond a reasonable doubt). In contrast, to prove a defendant guilty of refusal, the State need only prove beyond a reasonable doubt[11] that the arresting officer had probable cause to believe that defendant was operating the vehicle while intoxicated, and that, beyond a reasonable doubt, the defendant refused to submit to the breath test. N.J.S.A. 39:4-50.4a(a). Thus, unlike the refusal statute, the DWI statute requires proof beyond a reasonable doubt of operation of a vehicle while intoxicated, not merely that police had probable cause to so believe.
Unlike in Dillihay, supra, 127 N.J. at 50-52, 601 A.2d 1149, proof of guilt on one offense will not automatically establish guilt in the other. Thus, applying the Blockburger and Dillihay tests to the two offenses here, the two offenses are not the "same," because "`each [offense] requires proof of an additional fact [that] the other does not.'" Dillihay, supra, 127 N.J. at 50-51, 601 A.2d 1149 (quoting Blockburger, supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309).
We recognize, however, that there are instances where two offenses will merge even when each statute contains an element not required by the other. For example, in State v. Parker, 335 N.J.Super. 415, 426, 762 A.2d 690 (App.Div.2000), we concluded that a conviction for third-degree *478 drug distribution within 1,000 feet of a school, N.J.S.A. 2C:35-7, merges with a conviction for second-degree drug distribution within 500 feet of a public park, N.J.S.A. 2C:35-7.1.[12] This was so, even though each statute required proof of a fact not required by the other, presence within a school zone in the case of N.J.S.A. 2C:35-7, and presence within proscribed proximity to a public park in the case of N.J.S.A. 2C:35-7.1. Id. at 424, 762 A.2d 690. Our reasons for concluding in Parker that the school zone statute must merge with the public park statute "even [though] the two statutes technically are different offenses [with different elements]," id. at 424, 762 A.2d 690, demonstrates why DWI and refusal cannot merge.
In Parker, we began our analysis by observing that even if the two statutes "technically are different offenses, that fact does not lead inexorably to the conclusion that multiple punishments for these offenses do not offend principles of double jeopardy." Ibid. We noted that "[a]s instructed by Dillihay, we must examine the specific facts of each case in light of the `flexible' analysis permitted by State v. Davis, 68 N.J. 69, 81, 342 A.2d 841 (1975)." Ibid. The "flexible approach" articulated in Davis "allows us to examine whether multiple offenses, although similar, are `designed to protect the same or different interests.'" Ibid. (quoting State v. Miller, 108 N.J. 112, 116, 527 A.2d 1362 (1987)). If indeed they "protect the same interests," the two will merge and multiple punishments would be prohibited. Ibid.
Not only did we conclude in Parker that the school zone and public park statutes "protected ... the same interests," ibid., but we also concluded that merger was required because a prosecution for N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-7.1 arose from a "single criminal event." Id. at 426, 762 A.2d 690. We observed in Parker that Davis "`focuses on the episodic fragments of the [criminal] events.'" Id. at 425, 762 A.2d 690 (quoting Miller, supra, 108 N.J. at 116, 527 A.2d 1362). Among other things, the approach the Court required in Davis
entail[s] analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
[Davis, supra, 68 N.J. at 81, 342 A.2d 841.]
Applying that approach in Parker, we concluded that the defendant's conduct could not justify imposition of multiple punishments. Parker, supra, 335 N.J.Super. at 426, 762 A.2d 690. We reasoned that his conduct represented a "single criminal event, the underlying conduct consisting solely" of distribution of cocaine "on a single date, in a single location." Ibid. By happenstance, this single location "fell within two statutorily separately prohibited zones, a school and a public park." Ibid. However, "[w]ithout additional facts to demonstrate that defendant's conduct was an integral part of a larger scheme, or was episodic in nature," we concluded that "punishing him separately under each statute would violate double jeopardy principles, due process, and principles of fundamental fairness." *479 Ibid. To do otherwise, and impose multiple punishments because the two offenses were admittedly "separate and distinct offenses, one involving a school zone, the other a public park" would have been a "mechanistic approach ... not reconcilable" with the fairness or substantial justice Davis requires. Ibid. We thus concluded that the school zone offense merged with the public park offense, and separate punishments could not be imposed.[13]Id. at 426, 762 A.2d 690.
Applying the principles of Davis and Parker to the case before us demonstrates that the DWI and refusal statutes do not merge, and the imposition of separate punishments for each would not violate guarantees of due process and fundamental fairness or the prohibition against double jeopardy. In particular, unlike in Parker, where the defendant engaged in a single act at a single time and at the same location, here defendant Eckert's operation of his vehicle while intoxicated was a separate act that had already concluded by the time he committed the second offense of refusing to submit to the breath examination. Although perhaps the two offenses were separated by only an hour,[14] they were committed at separate times and separate places, and did not constitute the "single criminal event" we described in Parker. Ibid.
Moreover, unlike in Parker, where a single incident, by happenstance, violated two separate statutes, ibid., here each of the two offenses involved a separate purposeful act, and a separate violation of law. The "intent of the accused," defendant Eckert, was different in each of the two offenses. Unlike the defendant in Parker, whose sole objective was to distribute drugs, and where the location in which he did so was irrelevant to that objective, here defendant Eckert had a different purpose with each offense. One offense, the DWI, had as its central objective defendant's driving of his vehicle, albeit while intoxicated. The other had as its objective a different goal, avoiding prosecution, by refusing to submit to the breath examination. The two statutory objectives are likewise different. N.J.S.A. 39:4-50 broadly seeks to punish those who drive while intoxicated, while N.J.S.A. 39:4-50.4a promotes the narrower goal of punishing those who seek to thwart or avoid prosecution for DWI. Finally, and as we have already discussed, only some of the proof pertaining to one offense would be a "necessary ingredient," Davis, supra, 68 N.J. at 81, 342 A.2d 841, of the proofs for the other.
Thus, having applied the same factors that were applied in Davis and Parker, we conclude that the imposition of multiple punishments for the two offenses involved here would not violate the guarantees of due process and fundamental fairness or the prohibition against double jeopardy. Thus, because the two offenses are not "the same" and multiple prosecutions would not violate any constitutional guarantees, the merger of the DWI and refusal convictions was improper and cannot stand.

III.
Having concluded that the merger was improper, we now consider the remedy. If *480 we were to order that the merger be vacated, and require on remand that the offenses be sentenced separately, defendant would incur a greater penalty than he incurred in the Law Division, even if the sentences are to be concurrent. Specifically, because the refusal charge was merged, defendant paid no monetary assessments related to that charge. If the merger is vacated, and a separate sentence is imposed on the refusal charge, defendant will be subject to a fine of between $300 and $500. See N.J.S.A. 39:4-50.4a(a).
The imposition of an enhanced penalty is problematic. A defendant cannot, upon a retrial of a charge after a reversal of a conviction, be subjected to a greater punishment than he received in the first trial. State v. DeBonis, 58 N.J. 182, 188-89, 276 A.2d 137 (1971). While we recognize that we are not presented here with a retrial, the underlying principles are the same. Defendant should not, by virtue of having filed an appeal, be subjected to a greater sentence than he would have incurred had he not filed an appeal. Ibid.
We do recognize that where the sentence imposed in the first instance was illegal, a defendant has no basis to argue that imposition of a harsher sentence on appeal is prohibited. See State v. McCourt, 131 N.J.Super. 283, 287-88, 329 A.2d 577 (App.Div.1974) (holding that because the municipal court failed to impose either the six-month suspension of driving privileges or the level of fines that were required for operating an uninsured vehicle, the original sentence was illegal and defendant had no right to object to the imposition of a harsher sentence on appeal).[15] Thus, we must determine whether the sentence imposed was illegal from its inception, as was the case in McCourt, or whether instead the sentence imposed contained an error that must be corrected, but which was not of such character as to render the sentence illegal.
As the Court observed in State v. Murray, 162 N.J. 240, 246-47, 744 A.2d 131 (2000), a sentence is illegal only when it 1) "exceed[s] the penalties authorized by statute for a specific offense"; or 2) "although not in excess of the statutory maximum penalty, [is] not ... a disposition authorized by the Code."[16] As to the latter category, the Court observed that a sentence is not "authorized by the Code" when it includes a disposition not authorized by Chapter 43, N.J.S.A. 2C:43-1 to -22. Id. at 247, 744 A.2d 131. As examples, the Court noted that a sentence is "not in accordance with law if it fails to include a legislatively mandated term of parole ineligibility" or permits an indeterminate term in a youth correctional facility even though the defendant has already served a state or federal prison term.[17]Ibid. Other examples would include the failure to impose the period of driver's license suspension that is required upon conviction for eluding police, N.J.S.A. 2C:29-2(b), or a failure to impose the period of parole supervision required by the No Early Release Act, N.J.S.A. 2C:43-7.2(c). An illegal sentence may be corrected at any time before its completion. Murray, supra, 162 N.J. at 247, 744 A.2d 131.
Here, we are of course not addressing an offense arising under the Code, but are *481 instead confronted with a motor vehicle offense arising under Title 39. The second portion of the Murray rule must be modified accordingly, so that our inquiry is focused upon whether the sentence imposed lies outside the enumerated dispositions contained within N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.4a. Viewed in that light, the merger of offenses that the municipal court and Law Division permitted did not result in an illegal sentence. Because it obviously was not in excess of a statutory maximum penalty, it did not violate the first of the two Murray proscriptions. Nor does it lie outside the dispositions that are expressly authorized by N.J.S.A. 39:4-50 or 39:4-50.4a. Accordingly, the merger at issue here does not violate the second of the two Murray rules either. The sentence, therefore, was not illegal in the Murray sense, but is instead a sentencing error that requires correction.
Because the merger was improper, we reverse the sentence imposed by the Law Division. We remand for further proceedings consistent with this opinion. On remand, defendant shall have the option of either withdrawing his guilty pleas and proceeding to trial on all four of the charges,[18] or consenting to the imposition of separate sentences on the DWI and refusal charges. In such case, separate fines within the range for each statute must be imposed. The fines cannot be concurrent, as N.J.S.A. 39:4-50.4a(a) permits only the driver's license suspension to be concurrent or consecutive when a defendant is also sentenced for driving while intoxicated arising out of the same incident.
Reversed and remanded.
NOTES
[1] N.J.S.A. 39:4-50(a)(3) specifies that if a second DWI conviction occurs "more than 10 years after the first offense, the court shall treat the second conviction as a first offense for sentencing purposes...."
[2] The DWI statute specifies that for the first offense, persons with a blood alcohol concentration (BAC) of 0.08% or higher, but less than 0.10%, shall forfeit driving privileges for a period of three months. N.J.S.A. 39:4-50(a)(1)(i). If the blood alcohol concentration exceeds 0.10%, the required period of driver's license suspension is seven months to a year. N.J.S.A. 39:4-50(a)(1)(ii).

Here, because defendant refused to submit to the breath examination, the State could not prove any BAC level and could only offer observational evidence in an effort to prove defendant operated a vehicle "while under the influence of intoxicating liquor." N.J.S.A. 39:4-50(a)(1)(i). Thus, once the step-down was applied, defendant was subject only to a three-month license suspension for the DWI. Ibid.
[3] Pressler, Current N.J. Court Rules, Appendix to R. 7:6-2 (2010).
[4] Defendant had been charged with reckless driving, N.J.S.A. 39:4-96, and failure to observe marked lane, N.J.S.A. 39:4-88b.
[5] N.J.S.A. 39:4-50.4a(a) provides that a person found guilty of refusing to submit to a breath test designed to measure the extent of any alcohol consumption shall forfeit his driving privileges for a period of "not less than seven months or more than one year." The statute provides enhanced penalties upon a second or third conviction. Although not relevant here, the statute also requires an enhanced period of license suspension if the refusal occurs in proximity to a school.
[6] The Court noted that 600 people died in New Jersey in 1983 in alcohol-related car accidents. Id. at 28, 455 A.2d 460. By 2008, the number of such fatalities had declined, but twenty-six percent of all motor vehicle deaths were nonetheless alcohol-related. http://www.nj.gov/oag/hts/downloads/2009_OTLUA_Report-WEB.pdf.
[7] Pressler, Current N.J. Court Rules, Appendix to Part VII at 2307-08 (2010).
[8] For a second or subsequent refusal violation, the license suspension must be imposed consecutive to the license suspension for any accompanying DWI conviction, N.J.S.A. 39:4-50.4a(a), which is further evidence that the Legislature prohibited merger of the two offenses.
[9] 68 N.J. 69, 81, 342 A.2d 841 (1975).
[10] The Court then proceeded to a discussion of the express anti-merger bar in the school-zone statute, id. at 52-56, 601 A.2d 1149, which is not relevant to the issues before us here.
[11] In State v. Cummings, 184 N.J. 84, 95, 875 A.2d 906 (2005), the Court invalidated the portion of N.J.S.A. 39:4-50.4a(a) that had permitted a guilty verdict on the refusal statute by only a preponderance of the evidence, and insisted that the State prove beyond a reasonable doubt that police had probable cause to believe that defendant drove while intoxicated, and that, beyond a reasonable doubt, the defendant refused to submit to the breath test.
[12] N.J.S.A. 2C:35-7.1 also prohibits drug distribution within 500 feet of a public housing facility or a public building. For ease of reference, however, we will refer to this statute as the "public park" statute.
[13] Although we held that the third-degree school zone offense merged with the second-degree public park offense, we concluded that the thirty-six month parole disqualifier required by the former survived the merger. Ibid.
[14] The record does not tell us how much time elapsed between defendant's arrest for DWI and his later arrest for refusal. All four tickets, including the reckless driving and failure to maintain a lane, list the identical offense time, 00:50 a.m. on September 22, 2007.
[15] The McCourt rule was cited with approval in State v. Pomo, 95 N.J. 13, 17, 468 A.2d 428 (1983).
[16] New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 2C:104-9.
[17] The latter disposition violates N.J.S.A. 30:4-147.
[18] The four charges are: DWI, refusal, reckless driving, and failure to observe a marked lane.