SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Herby V. Desir** (A-43-19) (083584)

**Argued October 13, 2020 -- Decided February 9, 2021**

**SOLOMON, J., writing for the Court.**

In this appeal, the Court considers whether defendant Herby Desir is entitled to discovery regarding the controlled purchase of narcotics by a confidential informant (CI). Defendant was not charged in connection with that controlled purchase; however, the purchase formed the probable cause for issuance of a search warrant for defendant's home, and execution of the search warrant led to charges against defendant for multiple drug and weapons offenses.

The affidavit submitted by a detective from the Union County Prosecutor's Office (UCPO) in support of the search warrant application stated that a CI, who had previously provided reliable information that led to arrests, had contacted the detective and claimed defendant stored and sold Methylenedioxy-N-ethylcathinone (sometimes referred to as Molly) at his home. According to the affidavit, the detective intercepted two phone calls between the CI and defendant and overheard them discuss the sale of Molly and firearms. The affidavit stated that, during the second call, defendant told the CI to come to his house. The detective followed the CI to defendant's residence and monitored the home until after the CI exited. Afterward, the detective and the CI met at a pre-arranged location, where the CI gave the detective a substance obtained from defendant.

The affidavit stated that the "suspected 'Molly' obtained from [defendant] was submitted to the [UCPO] Laboratory where it . . . tested positive for [Molly,] a Schedule I controlled dangerous substance." The affidavit did not state that the detective provided the CI with "buy money" with which to purchase the drugs. Based solely on that affidavit, a judge granted a no-knock search warrant for defendant's home.

Defendant moved to suppress the contraband seized during the execution of the warrant and for a Franks hearing, which is a hearing to challenge the veracity of an affidavit upon which a facially valid search warrant is based. Counsel asserted that defendant did not sell Molly from his home. Five months after filing his motion to suppress and for a hearing, defendant moved to compel discovery, seeking the initial investigation report, any proof of money provided to the CI for the controlled buy, laboratory reports, and a transcript or audio recording of the intercepted calls.

The trial court denied defendant's motion to suppress and for a <u>Franks</u> hearing. Six months later, a different judge considered and denied defendant's motion to compel discovery. Defendant pled guilty to possession of Molly with intent to distribute, reserving the right to appeal the denial of his motions.

The Appellate Division reversed the denial of defendant's motion to compel discovery and remanded for further proceedings. 461 N.J. Super. 185, 187 (App. Div. 2019). The court permitted defendant, after receiving discovery, "either to withdraw his plea and proceed to trial . . . or to accept his earlier conviction and sentence." <u>Id.</u> at 194. Even though the indictment did not charge defendant with the sale of narcotics to the CI, the Appellate Division found that, under provisions of <u>Rule</u> 3:13-3(b)(1), the State should have automatically given defendant the laboratory report -- along with any police reports and video and sound recordings -- once the indictment was filed. <u>Id.</u> at 193.

The Court granted certification. 240 N.J. 553 (2020).

**HELD:** A defendant seeking discovery in connection with a <u>Franks</u> hearing may -- in the trial court's discretion and on showing a plausible justification that casts reasonable doubt on the veracity of the affidavit -- be entitled to limited discovery described with particularity that is material to the determination of probable cause. The Court affirms and modifies the Appellate Division's judgment and remands to the trial court for consideration under the standard adopted in this decision.

1. <u>Rule</u> 3:13-3(b)(1) codifies the criminal defendant's right to automatic post-indictment discovery of the evidence the State has gathered in support of its charges, including "exculpatory information or material" and a list of other "relevant material[s]." To qualify as "relevant material," the evidence must have a tendency in reason to prove or disprove a fact of consequence to the determination of the action. Courts have the inherent power to order discovery beyond the automatic discovery provisions of <u>Rule</u> 3:13-3(b) when justice so requires. But the discovery process is not a fishing expedition or an unfocused, haphazard search for evidence. One significant limit on defendants' discovery rights is the chilling and inhibiting effect that discovery can have on material witnesses. Recognizing that CIs play an indispensable role in police work, New Jersey has a privilege against disclosing the identity of the informant. (pp. 12-14)

2. Defendants seeking to challenge the basis of a search warrant must make an evidentiary showing before a hearing will be granted: they must first establish by a preponderance of the evidence that the allegedly false statement in the affidavit was made either deliberately or in reckless disregard of the truth. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978). In <u>State v. Howery</u>, the Court adopted and repeated the principles of <u>Franks</u>. 80 N.J. 563, 567 (1979). Under the <u>Franks/Howery</u> standard, a defendant's "attack must be more than conclusory," "supported by more than a mere desire to cross-examine," and "accompanied by an offer of proof." <u>Franks</u>, 438 U.S. at 171. (pp. 15-20)

3. In People v. Luttenberger, the California Supreme Court "adopt[ed] a preliminary showing requirement . . . that is somewhat less demanding than the" showing Franks requires "for purposes of discovery motions" challenging warrant affidavits "based on statements of an unidentified informant." 784 P.2d 633, 646 (Cal. 1990). Specifically, the Luttenberger court held that, "[t]o justify in camera review and discovery, preliminary to a subfacial challenge to a search warrant, a defendant must offer evidence casting some reasonable doubt on the veracity of material statements made by the affiant." Ibid. The court noted that, like requests for a Franks hearing, such discovery requests "should include affidavits supporting defendant's assertions of misstatements or omissions in the warrant affidavit. Further, a defendant should, if possible, specify the information he seeks, the basis for his belief the information exists, and the purpose for which he seeks it." Ibid. The Luttenberger court applied those requirements separately to discovery requests and motions for hearings, id. at 647, and then described what steps a trial court should take after a preliminary showing has been made, id. at 648. The Luttenberger court provided guidance about when, and, after redactions, what materials should be disclosed to defendants, to "assure the defendant of a judicial check on possible police misrepresentations, while preventing both unfounded fishing expeditions and inadvertent revelations of the identity of confidential police informants." See ibid. (pp. 20-25)

4. The Court adopts the Luttenberger standard and will require a defendant to describe with reasonable particularity the information sought in discovery, sustained by a plausible justification "casting a reasonable doubt on the truthfulness of statements made in the affidavit." Id. at 647. The discovery request should be buttressed by support for assertions of misstatements or omissions in the search warrant affidavit that are material to the determination of probable cause, the basis for believing that the information exists, and the purpose for which the information is sought. Application of this standard and the determination of whether it has been met in an individual case rest in the sound discretion of the trial judge, who will review the appropriately redacted discovery in camera. Only after such in camera review will the judge determine whether the discovery sought contradicts material facts set forth in the affidavit, should therefore be disclosed, and to what limitations or redactions the discovery might be subject. (pp. 26-28)

5. Applying that standard here, the Court first notes that the requested materials do not pertain to the "determination" of the charges against defendant, but rather to uncharged conduct; they are therefore not "relevant" within the meaning of Rule 3:13-3(b)(1), nor are they exculpatory. As a result, the materials were not subject to automatic disclosure under Rule 3:13-3(b)(1). (pp. 28-30)

6. The Court thus considers whether, to ensure the fairness of judicial proceedings, materials identified with reasonable particularity that fall beyond the scope of Rule 3:13-3(b)(1), but may call into question the validity of a search warrant affidavit, are discoverable to defendants who have shown a plausible justification for requesting the materials. Defendant clearly met the standard of reasonable specificity as to the lab

3

report, which was described in the affidavit. Defendant barely met the standard of plausible justification, given the importance of the lab report to the warrant affidavit, the dependence of the charges on the execution of that warrant, and the affiant's omission of any mention of "buy money" in the affidavit. In contrast, the other requested materials were broadly categorized, would not be amenable to necessary redactions, and were not identified with reasonable specificity. And the only justification offered in support of those materials was defendant's blanket denial, which is not sufficient. The Court stresses, moreover, that defendant's preliminary showing as to the lab report does not mean he is guaranteed access to that information. Rather, the court will have to review the report in camera. The ultimate discovery decision resides in the discretion of the trial court. The Court underscores its adherence to the Franks/Howery framework and reemphasizes the importance of preserving the confidentiality of informants. (pp. 30-35)

7. The Court acknowledges the error of the trial court in hearing defendant's motion to compel discovery six months after hearing his motion to suppress evidence. The Court urges counsel to file these motions together and courts to schedule these motions close in time. The Court relies on the trial courts to hold defendants to the proofs required by the preliminary standard adopted in this decision and, when defendants make that requisite showing, to exercise their discretion, after an in camera review, in determining whether, and in what manner, discovery should be allowed. (p. 35)

**The judgment of the Appellate Division is AFFIRMED AS MODIFIED.**

**JUSTICE ALBIN, dissenting,** agrees that defendant is entitled to discovery as set forth in Luttenberger but finds that the majority violates the essential tenets of that standard, citing the majority's announcement that a defendant's sworn statement contradicting averments in a warrant affidavit will not be sufficient to cast "reasonable doubt" on the veracity of the affidavit and therefore to entitle him to an in camera hearing. That pronouncement, Justice Albin notes, presupposes that the averments in a police officer's affidavit will always be truthful and that the averments in a defendant's affidavit will always be false -- a notion soundly rejected by other courts. Unlike the Luttenberger court, Justice Albin adds, the majority also requires the defendant to have telepathic powers -- to always be able to identify the specific items of discovery withheld from him. Crafting an illusory particularity requirement that defendants cannot reasonably meet will throttle meritorious claims for discovery, in Justice Albin's view. Justice Albin would remand to the trial court for application of the Luttenberger standard as it is and would require as a prerequisite to defendant's discovery request that he support his claim by sworn statements in an affidavit or certification. Justice Albin would also make clear that a pre-Franks discovery motion must always be resolved before a court considers whether a defendant is entitled to a Franks hearing.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICES LaVECCHIA and PIERRE-LOUIS join.**

# SUPREME COURT OF NEW JERSEY
## A-43 September Term 2019
### 083584

State of New Jersey,

Plaintiff-Appellant,

v.

Herby V. Desir, a/k/a
Johnathan Desir,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
461 N.J. Super. 185 (App. Div. 2019).

| Argued | Decided |
|--------|---------|
| October 13, 2020 | February 9, 2021 |

Steven A. Yomtov, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Steven A. Yomtov, of counsel and on the briefs).

Alicia J. Hubbard, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Alicia J. Hubbard, of counsel and on the briefs).

Patrick F. Galdieri, II, Assistant Middlesex County Prosecutor, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Angelo J. Onofri, Mercer County Prosecutor, President, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

1

Elyla Huertas argued the cause for amicus curiae
American Civil Liberties Union of New Jersey
(American Civil Liberties Union of New Jersey
Foundation, attorneys; Elyla Huertas, Alexander
Shalom, and Jeanne LoCicero, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

A confidential informant (CI) made a controlled purchase of narcotics from defendant. That purchase formed the probable cause for issuance of a search warrant for defendant's home. Execution of the search warrant led to charges against defendant for multiple drug and weapons offenses. Defendant was not charged with the underlying narcotics sale to the CI.

Defense counsel filed a motion to suppress the evidence seized from defendant's home pursuant to the search warrant and for a Franks hearing[1] because defendant claimed he never sold Methylenedioxy-N-ethylcathinone

---

[1] Named for the case in which the United States Supreme Court first ordered such a hearing, a Franks hearing is an evidentiary proceeding in which a defendant, upon a certain showing discussed later in this opinion, may challenge the veracity of an affidavit upon which a facially valid search warrant was based. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978); see also State v. Robinson, 200 N.J. 1, 7 (2009) (stating that when "a defendant challeng[es] the veracity of the allegations contained in an affidavit in support of a warrant . . . 'if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request'" (quoting Franks, 438 U.S. at 156)).

2

(sometimes referred to as Molly) from his house. Five months later, defendant filed a motion to compel discovery. Defendant sought items related to the uncharged sale by defendant to the CI, including a laboratory report mentioned in the search warrant affidavit, any police paperwork, and recordings of the phone calls between defendant and the CI. The State did not provide the requested discovery.

The trial court denied defendant's motion to suppress and for a <u>Franks</u> hearing, and months later denied his motion to compel discovery. Defendant then pled guilty to second-degree possession of Methylenedioxy-N-ethylcathinone with intent to distribute.

Defendant appealed. The Appellate Division determined that defendant was entitled to the discovery he requested and remanded to the trial court so that the defendant could elect to either withdraw his guilty plea or accept his earlier conviction and sentence.

The issue in this appeal is whether defendant is entitled to discovery regarding the uncharged purchase of narcotics by the CI. We determine that a defendant seeking discovery in connection with a <u>Franks</u> hearing may -- in the trial court's discretion and on showing a plausible justification that casts reasonable doubt on the veracity of the affidavit -- be entitled to limited discovery described with particularity that is material to the determination of

3

probable cause.  We therefore affirm and modify the Appellate Division's judgment and remand to the trial court for consideration under the standard adopted herein.

I.

A.

We derive the facts of this case from the trial and appellate records, including the affidavit submitted by a detective from the Union County Prosecutor's Office in support of the search warrant application.

That affidavit stated that a CI, who had previously provided reliable information that led to arrests, had contacted the detective and claimed defendant stored and sold Molly at his home.  According to the affidavit, the detective acted on that tip by conducting two consensual interceptions of telephone conversations between the CI and defendant, and he overheard the two discuss the sale of Molly and firearms.  The affidavit stated that, during the second call, defendant told the CI to come to his house.  The detective followed the CI to defendant's residence and monitored the home until after the CI exited.  Afterward, the detective and the CI met at a pre-arranged location, where the CI gave the detective a substance obtained from defendant.

The affidavit stated that the "suspected 'Molly' obtained from [defendant] was submitted to the Union County Prosecutor's Office Laboratory

4

where it was analyzed and tested positive for [Molly,] a Schedule I controlled dangerous substance." The affidavit did not state that the detective provided the CI with "buy money" with which to purchase the drugs.

Based solely on that affidavit, a judge granted a no-knock search warrant for defendant's home, where the police recovered 125 ounces of Molly, a handgun, hollow point bullets, currency, and drug paraphernalia.

## B.

A Union County grand jury thereafter indicted defendant on the following drug possession charges relating to Methylenedioxy-N-ethylcathinone: third-degree possession, N.J.S.A. 2C:35-10(a)(1); second-degree possession with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(4); third-degree possession with intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-7; and second-degree possession with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1. The grand jury also charged defendant with second-degree possession of a firearm in the course of committing a drug offense, N.J.S.A. 2C:39-4.1(a); and fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f).

Defendant filed a motion to suppress the contraband seized by police during the execution of the search warrant and for a Franks hearing. Defense counsel argued that the search warrant affidavit "was so defective and/or made

5

with reckless disregard for truth that the judge who signed the warrant could not possibly have fairly evaluated the existence of probable cause." In support of his motion for a <u>Franks</u> hearing, counsel asserted that, contrary to the allegations in the search warrant affidavit, defendant did not sell Molly from his home.

Five months later, defendant filed a motion to compel discovery pursuant to <u>Rule</u> 3:13-3(b), seeking the detective's initial investigation report, any proof of money provided to the CI for the controlled buy, laboratory reports, and a transcript or audio recording of the consensual interceptions between defendant and the CI. Defendant reiterated his denial that he was selling Molly out of his home and argued he was not on a "fishing expedition" to determine the identity of the CI.

The trial court first heard argument on defendant's motion to suppress and for a <u>Franks</u> hearing. The court denied the motion, finding defendant had failed to meet his burden of demonstrating that any of the statements in the search warrant affidavit were untrue.

Six months later, a different judge considered and denied defendant's motion to compel discovery. The judge found defendant's discovery request to be a fishing expedition to uncover the identity of the CI. Relying in part on the previous denial of defendant's motion for a <u>Franks</u> hearing, the judge

6

concluded that further discovery relating to the validity of the warrant would be irrelevant to the charges defendant faced.

Defendant pled guilty to second-degree possession of Methylenedioxy-N-ethylcathinone with intent to distribute. He reserved his right to appeal the denial of his motions to suppress and compel discovery. The trial court sentenced defendant to a seven-year prison term with three-and-one-half years of parole ineligibility. The remaining counts of the indictment were dismissed.

## C.

The Appellate Division reversed the denial of defendant's motion to compel discovery and remanded for further proceedings. State v. Desir, 461 N.J. Super. 185, 187 (App. Div. 2019). The Appellate Division concluded that,

> because defendant was not able to investigate anything in the detective's affidavit by obtaining routine discovery that should have been automatically provided to him, defendant did not have a fair opportunity to pursue his motion to suppress the evidence seized during the search authorized by the warrant or to obtain a Franks hearing.
>
> [Id. at 194.]

The Appellate Division permitted defendant, after receiving discovery, "either to withdraw his plea and proceed to trial . . . or to accept his earlier conviction

7

and sentence." Ibid. (omission in original) (quoting State v. Cummings, 184 N.J. 84, 100 (2005)).

The Appellate Division decided that defendant needed access to the lab report to "mount a viable attack on the validity of the search warrant." Id. at 192. Thus, "the timing of the court's consideration of the motion [to suppress] unduly prejudiced defendant." Ibid. Acknowledging a defendant's already heavy burden under Franks, the Appellate Division found the burden for this defendant "even more onerous because the State had still not responded to defendant's request for specific information about the warrant application, including a copy of the laboratory report." Id. at 190. The Appellate Division therefore held that considering the motion to compel discovery after denying the motion to suppress "did nothing to remedy the prejudice defendant had already suffered." Id. at 192-93.

Even though the indictment did not charge defendant with the sale of narcotics to the CI, the Appellate Division found that, under Rule 3:13-3(b)(1)(C), the State should have automatically given defendant the laboratory report -- along with any police reports, R. 3:13-3(b)(1)(E) and (H), and video and sound recordings, R. 3:13-3(b)(1)(A) -- once the indictment was filed. 461 N.J. Super. at 193. As to the contention that defendant sought discovery solely to determine the identity of the informant, the Appellate Division noted

8

that "defendant did not object to receiving redacted versions" of the records. Ibid. Finally, the Appellate Division distinguished State v. Broom-Smith,[2] noting that Broom-Smith involved a confirmatory drug analysis, while in this case, the detective had no first-hand knowledge that the item he received was Molly. Ibid.

We granted certification. 240 N.J. 553 (2020). We also granted amicus curiae status to the County Prosecutors Association of New Jersey (CPA) and the American Civil Liberties Union of New Jersey (ACLU).

## II.

The State asserts that the Appellate Division's decision is contrary to Franks and State v. Howery[3] since defendant did not meet the standard to challenge the veracity of the search warrant affidavit. The State also claims that Rule 3:13-3 does not entitle defendant to the information he seeks, redacted or otherwise, because the information is not relevant to the charges against him. The State further claims the Appellate Division's holding risks disclosure of the identity of confidential informants and will therefore have a chilling effect on their use. The State relies on Broom-Smith for support and

---

[2] 406 N.J. Super. 228 (App. Div. 2009), aff'd, 201 N.J. 229 (2010).

[3] 80 N.J. 563, 571 (1979) (prospectively adopting the Supreme Court's holding in Franks).

9

argues its result controls here. Finally, the State asks this Court to follow states which hold that when the credibility of an informant is at issue, but the judicial officer has been found truthful, the defendant's interest in disclosure is less compelling.

Amicus CPA reiterates many of the State's arguments but emphasizes the importance of confidential informants and the "informer's privilege." The CPA contends that redaction and in camera review do not protect confidential informants because even general information may allow a seasoned drug dealer to deduce the informant's identity. The CPA argues that the need for information in this case cannot outweigh the importance of protecting the identity of the confidential informant.

Defendant argues for affirmance of the Appellate Division's decision and expresses concern that a contrary result would mean "no one can hold accountable to the law those entrusted with the power to enforce the law," because false affidavits could be presented to a magistrate without recourse. Defendant contends that the <u>Franks</u> standard is so high that defendants cannot challenge affidavits without full and complete discovery. Furthermore, defendant points to examples of discovery that must be provided "to allow the defense to . . . examine the veracity of the State's witnesses' . . . accounts." Defendant therefore challenges the State's reliance on the <u>Franks</u>/<u>Howery</u>

10

framework, arguing that existing case law allows "affidavits to exist in an impenetrable tower of secrecy." Lastly, defendant claims that the information he seeks is relevant to the validity of the search warrant and challenges the State's reliance on Broom-Smith, emphasizing that the failure to conduct a field test of the drugs in this case is a key distinction.

Amicus ACLU supports defendant's arguments and emphasizes that the court's failure to permit him full discovery before proceeding with a hearing on the evidentiary issue denied defendant a fair trial. The ACLU also argues that remedies such as in camera review of evidence and redactions can protect the rights of both CIs and defendants.

## III.

The issue presented by this appeal is whether defendant is entitled to discovery regarding the underlying search warrant affidavit, even though he was not charged with the narcotics transaction referred to in that affidavit. Answering that question requires review of our rules governing criminal discovery generally, as well as applicable federal and New Jersey case law, including Franks, Howery, and Broom-Smith. We begin with our rules for discovery in criminal cases.

11

A.

"In New Jersey, an accused has a right to broad discovery after the return of an indictment in a criminal case." State v. Hernandez, 225 N.J. 451, 461 (2016). Our "open-file approach to pretrial discovery in criminal matters post-indictment" aims "[t]o advance the goal of providing fair and just criminal trials." State v. Scoles, 214 N.J. 236, 252 (2013).

Rule 3:13-3(b)(1) codifies the criminal defendant's "right to automatic and broad discovery of the evidence the State has gathered in support of its charges." State v. Stein, 225 N.J. 582, 594 (2016) (quoting Scoles, 214 N.J. at 252). That Rule "obligates the State to provide full discovery . . . when an indictment is returned or unsealed," State v. Robinson, 229 N.J. 44, 72 (2017), "[e]xcept for good cause shown," R. 3:13-3(b)(1). Full discovery, under Rule 3:13-3(b)(1), "shall include exculpatory information or material." The Rule thus explicitly renders automatic the turnover of exculpatory evidence mandated by the United States Supreme Court's holding in Brady v. Maryland.[4]

---

[4] 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

Significantly, the Rule further provides that post-indictment discovery "shall also include, but is not limited to, [a list of] relevant material[s]." R. 3:13-3(b)(1). "Relevance is measured in terms of the opportunity of the defendant to present a complete defense." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.2 on R. 3:13-3 (2020). "To qualify as 'relevant material,' the evidence must have "'a tendency in reason to prove or disprove [a] fact of consequence to the determination of the action."'" State v. Richardson, 452 N.J. Super. 124, 132 (App. Div. 2017) (alteration in original) (quoting State v. Gilchrist, 381 N.J. Super. 138, 146 (App. Div. 2005)). The kinds of items listed as discoverable include video and audio recordings, police reports, and lab reports. See R. 3:13-3(b)(1)(A), (C), (E), and (H).

Further, a court's "power to order discovery is not limited to the express terms of the automatic discovery provisions of Rule 3:13-3(b)." Richardson, 452 N.J. Super. at 132. Indeed, "courts have 'the inherent power to order discovery when justice so requires.'" Ibid. (quoting State ex rel. A.B., 219 N.J. 542, 555 (2014)).

"While discovery in criminal cases is broad," however, "it is not unlimited." Hernandez, 225 N.J. at 463. The discovery process is not "a fishing expedition." State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), aff'd, 201 N.J. 229 (2010). It is not "an unfocused, haphazard

13

search for evidence." State v. D.R.H., 127 N.J. 249, 256 (1992). And one "significant limitation on defendants' discovery rights is the chilling and inhibiting effect that discovery can have on material witnesses who are subjected to intimidation, harassment, or embarrassment." Ibid.

As an example, New Jersey "recognize[s] that informants play 'an indispensable role in police work' and that, in consequence, the privilege against disclosing the identity of the informant 'has long been considered essential to effective enforcement of the criminal code.'" State v. Williams, 356 N.J. Super. 599, 603 (App. Div. 2003) (quoting State v. Milligan, 71 N.J. 373, 381 (1976)). New Jersey law therefore protects the identity of confidential informants from disclosure in criminal proceedings by allowing a witness "to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the law[] . . . to a representative of the State or the United States." N.J.S.A. 2A:84A-28; N.J.R.E. 516.

Here, defendant's discovery request, which pertains to a transaction with the CI, implicates those concerns as well as our recognition of the fundamental importance of broad discovery to the fairness of criminal proceedings. But the ultimate focus of defendant's request -- his desire to challenge an alleged drug transaction that served as the basis for a search warrant but was not itself the

subject of any criminal charge -- raises additional considerations.  Under federal and state case law, defendants seeking to challenge the basis of a search warrant must make an evidentiary showing before a hearing will be granted.  We now turn to that case law, beginning with the United States Supreme Court's decision in <u>Franks v. Delaware</u>.

B.

In <u>Franks</u>, officers took the defendant into custody for the assault of a fifteen-year-old girl.  438 U.S. at 156.  At the same time, officers were investigating the sexual assault at knifepoint of another woman, Cynthia Bailey, who provided a detailed description of her assailant, including the clothes he wore.  <u>Ibid.</u>  Officers prepared an affidavit purportedly supporting probable cause to search the defendant's residence.  <u>Id.</u> at 157.  The affidavit asserted that information provided by personnel at defendant's workplace confirmed his "normal dress" to be consistent with the clothing worn by Ms. Bailey's attacker.  <u>Ibid.</u>  A search warrant was issued, and a search of the defendant's residence revealed the described clothing and a knife.  <u>Ibid.</u>

Before trial, the defendant's counsel filed a motion to suppress the clothing and knife seized, claiming that "the warrant on its face did not show probable cause and that the search and seizure were in violation of the Fourth and Fourteenth Amendments."  <u>Id.</u> at 157-58.  At the hearing on the motion to

suppress, defense counsel attacked the veracity of the warrant affidavits, claiming the purported sources of information in the affidavits never spoke to the affiants "and that, although they might have talked to another police officer, any information given by them to that officer was 'somewhat different' from what was recited in the affidavit." Id. at 158.  Defense counsel offered to produce the supposed sources of the affidavits' information at the hearing on the motion to suppress.  Ibid.  The State of Delaware objected, asserting "that the court must decide petitioner's motion 'on the four corners' of the affidavit." Id. at 160.  The trial judge agreed and admitted the evidence at the defendant's trial for both assaults.  Ibid.  The jury convicted the defendant, and the Delaware Supreme Court affirmed.  Ibid.

The United States Supreme Court granted the defendant's petition for certiorari to consider "whether the trial court had erred in refusing to consider his allegation of misrepresentation in the warrant affidavit." Id. at 161.  The Court reversed the defendant's conviction, holding that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

[Id. at 155-56.]

16

Thus, according to the holding in Franks, a defendant who requests a hearing to challenge a search warrant affidavit must first establish by a preponderance of the evidence that the allegedly false statement in the affidavit was made either deliberately or in reckless disregard of the truth. Ibid. Then, "with the affidavit's false material set to one side, [if] the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 156.

While Franks was pending before the United States Supreme Court, this Court granted the defendant's petition in State v. Howery, 80 N.J. 563, 566 (1979). In that case, the defendant, Richard Howery, challenged a search warrant affidavit based on information supplied by a cooperating witness and evidence lawfully seized from a second cooperator's residence. Id. at 572. The defendant pointed out two errors in the affidavit: (1) a reference to two "bundles" of heroin in a note signed by "Richie," when the note was actually signed by "Rich" and did not mention "bundles," which is a term used to "specify a quantity of heroin"; and (2) a statement attributed to a cooperator that the defendant stored heroin at his house when, in fact, the cooperator told the detective that it was stored by Jimmy Howery, the defendant's brother. Id.

17

at 573-74.  Relying on <u>Franks</u>, we affirmed the defendant's conviction for heroin possession and distribution, concluding that both errors were mistakes rather than "the type of bad-faith, perjurious misconduct which would necessitate excision of the challenged paragraph from the affidavit."  <u>Id.</u> at 575.

In affirming the defendant's conviction, this Court recognized the significant limitations and burdens <u>Franks</u> places upon defendants.  <u>Id.</u> at 567.  In <u>Howery</u>, we adopted and repeated the principles of <u>Franks</u>, stating that a "defendant must make a 'substantial preliminary showing' of falsity in the warrant."  <u>Ibid.</u> (quoting <u>Franks</u>, 438 U.S. at 170).  We reiterated that a defendant must first allege that the false statements in the warrant were made deliberately or in "'reckless disregard for the truth,'" <u>ibid.</u> (quoting <u>Franks</u>, 438 U.S. at 170), and we explained that the defendant must "point[] out with specificity the portions of the warrant that are claimed to be untrue," <u>ibid.</u>  We added that the defendant should support those allegations with "an offer of proof including reliable statements by witnesses."  <u>Ibid.</u>  We also noted that the defendant's allegations "must be proved by a preponderance of the evidence" and that the false statements in the affidavit "must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause."  <u>Id.</u> at 568.

18

The Appellate Division later relied upon Howery in deciding Broom-Smith, 406 N.J. Super. at 241, which is cited by the State here. The defendant in Broom-Smith challenged the municipal judge's authority to issue a search warrant that relied upon an affidavit attesting to uncharged sales of cocaine to a confidential informant. Id. at 231-32, 234. The defendant sought discovery regarding the investigation "leading up to the warrant application," including documents relating to chain of custody of the drugs seized, reports of investigators, and "notes of communications with the confidential informant." Id. at 232. Counsel claimed in his motions for discovery and for a Franks hearing that the discovery sought would explain why investigators applied to the municipal judge for a search warrant and would support the defendant's challenge to the court's jurisdiction to issue the warrant. Id. at 232, 235.

The trial court denied the defendant's motions, concluding, in part, that the defendant's "broad demand" for discovery "was a veiled attempt to learn the identity of the confidential informant." Id. at 240. The defendant pled guilty to first-degree possession with the intent to distribute cocaine and the Appellate Division affirmed, stating that "a Franks hearing is not directed at picking apart minor technical problems with a warrant application; it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." Id. at 230-31, 240. The appellate court also concluded that

19

documents relating to chain of custody after the drugs seized tested positive for cocaine were "irrelevant to the validity of the warrant." Id. at 240.

Those cases reveal that while the standard imposed by Rule 3:13-3(b)(1) is low -- the State must automatically turn over to defendants exculpatory or otherwise relevant information -- a defendant's burden under Franks and Howery is high -- a defendant's allegations of deliberately or recklessly false material statements in the warrant affidavit must be pointed out with specificity and supported by an offer of proof, "including reliable statements by witnesses." Howery, 80 N.J. at 567. We repeat that to earn a hearing under the Franks/Howery standard, a defendant's "attack must be more than conclusory," "supported by more than a mere desire to cross-examine," and "accompanied by an offer of proof." Franks, 438 U.S. at 171.

C.

This Court has not previously considered the interplay of our discovery rules and the showing required to obtain discovery of materials that might enable a defendant to make the showing required to obtain a Franks hearing, but the Supreme Court of California confronted a similar issue in People v. Luttenberger, 784 P.2d 633 (Cal. 1990).

In Luttenberger, the defendant was indicted for selling methamphetamine after officers executed a search warrant for the defendant's

20

home and found drugs, drug paraphernalia, money, and a loaded handgun.  Id. at 636.  The affidavit of probable cause supporting the search warrant application relied on information supplied by a purportedly reliable confidential informant, but it did not describe the basis for the officer's assertion of the informant's reliability.  Ibid.

Pointing to that deficiency, the defendant sought to challenge the warrant.  See ibid.  Like defendant here, the defendant in Luttenberger "did not contend the affidavit was facially insufficient to establish probable cause for issuing a search warrant.  Instead, he sought information to support a . . . challenge [to] the veracity of statements made in the affidavit."  Ibid.  To mount his challenge to "the accuracy of [those] statements," id. at 635, the defendant sought the court's "in-camera review of any information disclosed or discoverable . . . as to the informant's past experiences with dangerous drugs, any police reports of incidents [filed] against [informant]," any vouchers reflecting pay "for [informant's] services to the police department, [and] any [promises or] representations . . . that were made to" the informant, id. at 636 (alterations in original).

The magistrate who heard the defendant's motion denied his request, but the superior court reversed and dismissed the charges against the defendant for

21

failure to provide the discovery requested.  Id. at 636-37.  The intermediate appellate court affirmed the order of dismissal.  Id. at 636.

The California Supreme Court, in turn, reversed the judgment of the appellate court, vacated the order of dismissal, and remanded for further proceedings.  Id. at 648.  In so doing, the court reviewed both state and federal case law and "adopt[ed] a preliminary showing standard, which a defendant must satisfy to obtain in camera examination and discovery of information regarding police informants."  Id. at 636.

The Luttenberger court reviewed Franks and ultimately found a key distinction between that case and the one before it:

> The search warrant affidavit at issue in Franks differed from that in the present case in a crucial respect:  it relied not on information from a confidential informant, but on statements attributed to two named sources, whom the defendant had been able to contact. . . . [T]he high court did not need to, and did not, reach the proper procedure or preliminary showing required in cases involving confidential informants.  The court expressly reserved "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made."  It noted only that due process "did not require the State to expose an informant's identity routinely, upon a defendant's mere demand, when there was ample evidence in the probable-cause hearing to show that the informant was reliable and his information credible."  The court also pointed out that it was permitting impeachment of only the affiant, not of any nongovernmental informant.

22

[<u>Id.</u> at 638-39 (quoting <u>Franks</u>, 483 U.S. at 170).]

While stressing the distinct concerns raised when discovery is sought in connection with information purportedly provided by an informant, the <u>Luttenberger</u> court noted that "<u>Franks</u> did not restrict, either explicitly or implicitly, a defendant's right to discovery <u>prior</u> to the evidentiary veracity hearing." Id. at 643. The <u>Luttenberger</u> court further stated, "[w]e do not believe that by its formulation of the preliminary showing, the <u>Franks</u> court intended effectively to bar challenges to warrant affidavits based on confidential informants' tips." <u>Ibid.</u> The California court thus declined to "require[] a defendant to meet the <u>Franks</u> preliminary showing standard before obtaining limited discovery relevant to the truthfulness of the warrant affidavit" -- a requirement the court stressed that even "<u>Franks</u> itself" did not impose. <u>Id.</u> at 644.

Ultimately, the <u>Luttenberger</u> court "adopt[ed] a preliminary showing requirement . . . that is somewhat less demanding than the 'substantial showing of material falsity' required by <u>Franks</u>, 438 U.S. 154," "for purposes of discovery motions" challenging warrant affidavits "based on statements of an unidentified informant." <u>Id.</u> at 646. Specifically, the court held that, "[t]o justify in camera review and discovery, preliminary to a subfacial challenge to a search warrant, a defendant must offer evidence casting some reasonable

23

doubt on the veracity of material statements made by the affiant." Ibid. The court indicated that, like requests for a Franks hearing, such discovery requests "should include affidavits supporting defendant's assertions of misstatements or omissions in the warrant affidavit. Further, a defendant should, if possible, specify the information he seeks, the basis for his belief the information exists, and the purpose for which he seeks it." Ibid.

Applying those requirements separately to discovery requests and motions for hearings, the Luttenberger court explained that,

> [f]or purposes of obtaining discovery, a defendant need not show that the alleged inaccuracies of the affidavit resulted from the affiant's bad faith. . . . [C]asting a reasonable doubt on the truthfulness of statements made in the affidavit will suffice, regardless of the defendant's ability to show bad faith or trace the inaccuracy directly to misrepresentations by the affiant.
>
> To obtain an in camera hearing, however, the defendant must raise a substantial possibility that the allegedly untrue statements were material to the probable cause determination. . . . After its in camera examination of the materials requested by the defendant, the court may then order production of only those documents that are relevant to the material inaccuracies asserted by the defendant.
>
> Materiality will depend in part on how vital the information attributed to the unnamed sources is to a showing of probable cause.
>
> [Id. at 647.]

24

The Luttenberger court then described what steps a trial court should take after a preliminary showing has been made. See id. at 648. If the documents the defendant seeks, when viewed in camera, "do not support defendant's charges of misrepresentation, the court should report only this conclusion to the defendant, and should not order production of any of the reviewed materials." Ibid. Conversely, if the trial court finds that the "documents contain information that tends to contradict material representations made in the affidavit, or constitute material omissions from it, then it should order disclosure of the documents to defendant," subject to redaction. Ibid.

The court thus provided guidance about when, and, after redactions, what materials should be disclosed to defendants, to "assure the defendant of a judicial check on possible police misrepresentations, while preventing both unfounded fishing expeditions and inadvertent revelations of the identity of confidential police informants." See ibid.

The Luttenberger court then applied its new test to the record before it and concluded that "the trial court did not abuse its discretion in denying [the] defendant's motion for in camera review and discovery" because that "motion was based entirely on conclusory assertions, unsupported by affidavits, and [the defendant] failed to raise any doubt regarding the truthfulness of the warrant affidavit." Ibid.

25

IV.

We find persuasive the Luttenberger court's detailed and nuanced balancing of the disparate considerations raised in that case, which are mirrored in the case before us. As that court found, broad discovery rules must at times yield before countervailing considerations like the recognized need to protect confidential informants when a challenge is posed to a presumptively truthful warrant affidavit that relies on assertions about uncharged conduct. At the same time, the exacting standard set forth in Franks does not factor in the difficulties faced by a defendant who seeks to challenge an allegation by a confidential informant and the concerns of fairness raised by those difficulties; nor does it consider discovery requests in their own right, as distinct from hearing requests.

The California Supreme Court's standard in Luttenberger generally serves New Jersey's interests in cases such as this by protecting both the identity of confidential informants and a defendant's right to discovery. In applying that standard, we will require a defendant to describe with reasonable particularity the information sought in discovery, sustained by a plausible justification "casting a reasonable doubt on the truthfulness of statements made in the affidavit." Id. at 647. The discovery request should be buttressed by support for defendant's assertions of misstatements or omissions in the warrant

26

affidavit that are material to the determination of probable cause, the basis for believing that the information exists, and the purpose for which the information is sought.

Application of this standard and the determination of whether it has been met in an individual case rest in the sound discretion of the trial judge, see Hernandez, 225 N.J. at 461, who will review the appropriately redacted discovery in camera. Only after such in camera review will the trial judge determine whether the discovery sought contradicts material facts set forth in the search warrant affidavit, should therefore be disclosed, and to what limitations or redactions the discovery might be subject. We find that such a standard strikes a fair balance.

"[O]ur system of the administration of justice suffers when any accused is treated unfairly." Brady, 373 U.S. at 87. And at their core, our "rules of discovery . . . are designed to accomplish fairness." State v. Bellamy, 329 N.J. Super. 371, 376 (App. Div. 2000) (quoting State v. Kearney, 109 N.J. Super. 502, 505 (Law Div. 1970)). "Indeed, '[t]he principal purpose of our discovery rules is to assure the parties every legitimate avenue of inquiry prior to trial to enhance the search for the truth.'" Ibid. (alteration in original) (quoting State v. Burnett, 198 N.J. Super. 53, 58 (App. Div. 1984)). It is the notion of

fairness in our system of criminal justice as expressed in <u>Brady</u> and our discovery rules that we import here.

V.

A.

We now apply that standard to defendants' discovery requests and motion for a <u>Franks</u> hearing. We begin with a brief review of defendant's requested discovery and the showing he has made in support of his requests.

Defendant claims that he did not sell Molly from his home, contrary to the allegations in the search warrant affidavit. Because those allegations form the entire basis of the search warrant that led to the charges against him, he argues, any evidence seized as a result of that warrant must be suppressed.

Defendant has not supported his assertion[5] with affidavits or statements of witnesses. Rather, he points to the search warrant affidavit's failure to mention "buy money" -- money provided to the CI to fund the CI's alleged controlled drug purchase from defendant. Defendant sought discovery pertaining to the uncharged sale of Molly to the CI to seek proof of his contentions. Specifically, defendant requested the lab report mentioned in the warrant affidavit, as well as any additional police reports and audio and video

---

[5] For purpose of this appeal, we treat the representations of defendant's counsel as defendant's certification or affidavit.

28

recordings of interactions with the CI. Defendant claims that without the discovery requested, it would be impossible for him to disprove the State's claim that the CI exited defendant's home and gave the detective Molly he had obtained from defendant.

B.

To determine whether defendant is entitled to discovery of the requested materials, we first consider Rule 3:13-3(b)(1), which requires the automatic disclosure of evidence that is exculpatory or otherwise relevant.

If the materials were directly relevant to the charges that defendant faced -- if they had "a tendency in reason to prove or disprove a fact of consequence to the determination of the action," Richardson, 452 N.J. Super. at 132 (quotation and alteration omitted) -- they would have been subject to automatic disclosure under Rule 3:13-3(b)(1). Here, however, the materials do not pertain to the "determination" of the charges against defendant, but rather to uncharged conduct; they are therefore not "relevant" within the meaning of Rule 3:13-3(b)(1). Similarly, the materials requested are not exculpatory -- defendant has not been charged for the underlying narcotics sale to the CI, and any evidence disproving the sale would not be material to the drugs and

29

weapons offenses he faces under the indictment. As a result, the materials were not subject to automatic disclosure under Rule 3:13-3(b)(1).

The question thus presents whether, to ensure the fairness of judicial proceedings, see Bellamy, 329 N.J. Super. at 376, materials identified with reasonable particularity that fall beyond the scope of Rule 3:13-3(b)(1), but may call into question the validity of a search warrant affidavit, are discoverable to defendants who have shown a plausible justification for requesting the materials, see Richardson, 452 N.J. Super. at 132. In order for that standard -- which is higher than that imposed by Rule 3:13-3(b)(1) but lower than that required for a Franks hearing -- to successfully balance the competing considerations, it must be applied strictly.

Here, for example, the charges defendant faces all arise out of what was found during the execution of the search warrant. Thus, to the extent that discovery sought would substantiate defendant's claim that the sale of Molly to the CI never happened, it has the potential to void the search warrant and result in suppression of the contraband upon which the indictment is based. If that sale never occurred, "the affidavit's remaining content is insufficient to establish probable cause, [and] the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 156. But vague

claims of conceivable or potential support for defendant's argument are not enough. To prevent a fishing expedition and to respect the presumption of validity that attaches to a warrant affidavit, the materials identified with reasonable specificity must be plausibly connected to invalidating the warrant affidavit.

Applying that standard here, we find that only defendant's request for the lab report meets that two-part test. First, the report was identified within the warrant affidavit itself as a unique, concrete document. Indeed, the lab report was the evidentiary pillar on which the warrant affidavit was built. The affidavit states that the "suspected 'Molly' obtained from [defendant] was submitted to the Union County Prosecutor's Office Laboratory where it was analyzed and tested positive for [Molly,] a Schedule I controlled dangerous substance." If that statement is supported by the lab report, it would disprove defendant's claims.

But if the lab report does not exist or contradicts the affidavit in a material way, defendant may be entitled to a <u>Franks</u> hearing. This is not like <u>Broom-Smith</u>, 406 N.J. Super. at 240, where a field test confirmed the challenged sale of cocaine to a confidential informant. Here, the validity of the warrant affidavit hinges on the contents of the lab report. Further, while we consider the affidavit's failure to mention "buy money" likely a clerical

31

mistake, and not "the type of bad-faith, perjurious misconduct which would necessitate excision of the challenged paragraph from the affidavit," Howery, 80 N.J. at 575, the omission lends some support to defendant's claim that the CI did not purchase Molly from him.

Accordingly, with respect to the lab report, defendant meets the preliminary standard we have set forth above. First, he has clearly met the standard of reasonable specificity as to the report, which was described in the affidavit. He has also barely met the standard of plausible justification, given the importance of the lab report to the warrant affidavit, the dependence of the charges on the execution of that warrant, and the affiant's omission of any mention of "buy money" in the affidavit. Of course, but for that omission, defendant would not meet the standard of plausible justification.

The contents of the lab report may strike at the heart of defendant's indictment and his prosecution. Fairness in our system of criminal justice therefore obliges in camera review of the properly redacted report, which will protect the CI's identity.[6] The determination of what happens next -- whether

_____

[6] We stress that, even though defendant has made the requisite showing as to the lab report, he is not guaranteed access to that information. Rather, the court will have to review the report in camera and consider whether it contradicts representations in the affidavit and, if so, whether it is amenable to necessary redaction, or whether it would pose too great a risk of jeopardizing

a <u>Franks</u> hearing should be granted -- would depend on what the report

reveals[7] and lies in the discretion of the trial court.[8]

We have a different view with respect to the other materials defendant

sought to discover.  The Appellate Division allowed discovery of "copies of

<u>any</u> police reports prepared in connection with the case . . . and <u>any</u> video and

sound recordings," including recordings of conversations between the police

and the CI.  <u>Desir</u>, 461 N.J. Super. at 193 (emphases added).  Those broadly

categorized materials would not be amenable to necessary redactions and have

---

the informant's identity.  We reiterate that the ultimate discovery decision resides in the discretion of the trial court.

[7]  This Court received a letter from the State verifying that the lab report revealed that the substance did test positive as Molly.  The lab report's contents affect the relief to which defendant is entitled but do not affect the analysis of the discoverability of the lab report.  The analysis we provide by way of guidance above shows how trial courts should assess similar discovery requests in the future.

[8]  The timeline we sketch out here casts light on the inappropriateness of the timing of the consideration of defendant's motions in this case.  Defendant's motions to compel discovery and to suppress evidence should have been heard, if not at the same time, then as close in time as possible -- and definitely not six months apart.  Defendant contributed to that problem by filing his motion to compel discovery five months after filing his motion to suppress.  The better practice is to make both requests at the same time.

Furthermore, it was inappropriate for the trial court to rely on the denial of the motion to suppress in denying the motion to compel discovery.  As we have stated, while a defendant's burden under <u>Franks</u> and <u>Howery</u> is high, the required showing for discovery purposes is different and, necessarily, lower.

33

not been identified with reasonable specificity.  Nor is the request for those

materials backed by a plausible justification.  All we have as to them in this

case is defendant's blanket denial, which we do not consider sufficient.[9]  Also,

to the extent the materials exist, they might have no impact on the affidavit.

Therefore, as to those materials, the record before the trial court and on appeal

before us does not satisfy the preliminary showing required to warrant an in

camera review.

We underscore our adherence to the Franks/Howery framework and

reemphasize the importance of preserving the confidentiality of informants.  In

a case like this, even a laboratory report could place the CI at risk because of

information such as dates on the report, packaging of the substance tested, or

---

[9]  We do not embrace the eighteen-year-old California intermediate appellate court decision, People v. Estrada, 129 Cal. Rptr. 2d 589 (Ct. App. 2003), the dissent cites.  In that case, the defendant sought discovery regarding whether "the confidential informant(s) . . . made the controlled buy described in the affidavit in support of the search warrant."  Id. at 592.  The defendant offered only the search warrant affidavit and his own affidavit in support of his motion, which consisted of a blanket denial of culpability.  Id. at 593, 598.  In any event, the court did not compel in camera disclosure of the discovery sought, but remanded, finding the trial court "should have exercised discretion utilizing the Luttenberger . . . standard" and noting that, "[d]efendant's motion requested that the informant's identity be revealed but did not otherwise explain how that was to happen.  If [the] defendant is unable to identify with greater specificity what he desires the trial court to do, it remains free to deny the motion."  Id. at 599.

other seemingly innocuous details.  Redaction and protection against disclosure of identifying details are required.

In reaching our decision, we acknowledge the error of the trial court in hearing defendant's motion to compel discovery six months after hearing his motion to suppress evidence.  We urge counsel to file these motions together and courts to schedule these motions close in time.  We rely on our trial courts to hold defendants to the proofs required by the preliminary standard we adopt today and, when defendants make that requisite showing, to exercise their discretion, after an in camera review, in determining whether, and in what manner, discovery should be allowed in order to balance the important concerns of fairness and protection of confidential informants.

## VI.

For the reasons set forth above, we affirm and modify the judgment of the Appellate Division by limiting defendant's discovery only to the redacted lab report.  We remand to the trial court for consideration under the standard adopted herein.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion.  JUSTICE ALBIN filed a dissent, in which JUSTICES LaVECCHIA and PIERRE-LOUIS join.

35

State of New Jersey,

Plaintiff-Appellant,

v.

Herby V. Desir, a/k/a
Johnathan Desir,

Defendant-Respondent.

JUSTICE ALBIN, dissenting.

In this case, an affidavit in support of a search warrant, relying in part on the veracity of a confidential informant (CI), averred that the CI purchased a controlled dangerous substance, commonly known as Molly, from defendant in defendant's residence. Defendant claims that he never sold Molly from his home and that the averments in the affidavit asserting otherwise were knowingly or recklessly made false statements. Defendant sought a Franks hearing[1] to challenge the validity of the search warrant and the evidence seized from his home pursuant to the warrant. The issue is what discovery, if any, is defendant entitled to as part of his request for a Franks hearing. It bears

---

[1]  Franks v. Delaware, 438 U.S. 154 (1978).

1

mentioning that defendant does not object to the redaction of reports and does not seek disclosure of the CI's identity.

I agree with the majority that defendant is entitled to discovery as set forth in People v. Luttenberger, 784 P.2d 633 (Cal. 1990). I dissent because the majority opinion, although adopting the Luttenberger standard in name, violates the essential tenets of that standard as applied by California courts and does so in a way that will render a discovery request illusory.

Having established a new discovery standard, the majority does not take the simple step of remanding to the trial court to permit defendant to satisfy that standard. Instead, the majority misapplies the Luttenberger standard when it announces that a defendant's sworn statement contradicting averments in a search warrant affidavit will not be sufficient to cast "reasonable doubt" on the veracity of a warrant affidavit and therefore to entitle him to an in camera hearing. That pronouncement evidently presupposes that the averments in a police officer's affidavit will always be truthful and that the averments in a defendant's affidavit will always be false -- a notion soundly rejected by California courts and other courts.

Unlike the Luttenberger court, the majority also requires the defendant to have telepathic powers -- to always be able to identify the specific items of discovery withheld from him. Notwithstanding the majority's particularity

requirement, the majority does not find sufficient specificity in defendant's discovery request that -- subject to redaction -- the prosecution provide "proof of buy money," audio recordings or transcripts of call intercepts, and relevant police reports. Crafting an illusory particularity requirement that defendants cannot reasonably meet will undoubtedly throttle meritorious claims for discovery.

I would remand to the trial court for application of the Luttenberger standard as it is. Following the Luttenberger standard, I would allow the trial court, in an in camera hearing, to determine what, if any, relevant discovery should be made available to defendant -- without the advance restrictions the majority has set in place, which limit defendant to only a redacted laboratory report. Luttenberger does not restrict the scope of relevant discovery that the trial court may review in camera.

I would require as a prerequisite to defendant's discovery request that he support his claim by sworn statements in an affidavit or certification. If defendant is willing to make averments under oath, subjecting himself to the criminal sanction of perjury, then the trial court should conduct an in camera review to determine the validity of the discovery request, keeping in mind the importance of safeguarding the CI's identity. I am not averse to allowing the

State to redact portions of the discovery that might reveal the identity of the CI, even before submission to the court.

Because the majority does not follow the standard that it purportedly adopts, I respectfully dissent.

I.

In this case, defendant has moved to suppress drugs and a weapon seized from his home pursuant to a search warrant. That warrant was secured by a detective who filed an affidavit averring, among other things, that a CI had purchased Molly from defendant in defendant's home. Defendant has denied that this uncharged drug transaction occurred. At defendant's trial, the State does not intend to present evidence of the CI's drug transaction with defendant -- the transaction that formed the probable cause for the issuance of the warrant.

The majority holds that defendant's challenge to the veracity of the warrant affidavit in this scenario does not trigger open discovery under Rule 3:13-3(b) and instead adopts the more restrictive standard in Luttenberger. I agree with that approach. But that is where my agreement ends because the majority fails to follow Luttenberger.

In Luttenberger, the California Supreme Court held that "[t]o justify in camera review and discovery, preliminary to a subfacial challenge to a search

4

warrant, a defendant must offer evidence casting some reasonable doubt on the veracity of material statements made by the affiant." 784 P.2d at 646. In particular, "the defendant must raise some reasonable doubt regarding either the existence of the informant or the truthfulness of the affiant's report" before a court orders in camera review. Ibid. To meet his burden, the defendant "should include affidavits supporting [his] assertions of misstatements or omissions in the warrant affidavit" and "if possible, specify the information he seeks, the basis for his belief the information exists, and the purpose for which he seeks it." Ibid. (emphasis added). The defendant may satisfy the required showing by "mak[ing] factual allegations contradicting statements in the warrant affidavit, or rais[ing] inconsistencies on the face of the affidavit," though the "defendant need not show that the alleged inaccuracies of the affidavit resulted from the affiant's bad faith." Id. at 647.

In the wake of Luttenberger, the California Court of Appeals held that a defendant's sworn declaration denying the warrant affidavit's assertion that a controlled drug buy occurred is sufficient to "'cast[] some reasonable doubt on the veracity of material statements' appearing in the search warrant affidavit." People v. Estrada, 129 Cal. Rptr. 2d 589, 597 (Ct. App. 2003) (quoting Luttenberger, 784 P.2d at 646). In Estrada, the defendant was charged with drug and weapons offenses arising out of the execution of a search warrant.

5

Id. at 591-92. The police had secured the warrant based on an affidavit that alleged that the police witnessed a CI "make a controlled purchase of cocaine from [the defendant]." Id. at 593. The defendant moved to suppress the seized evidence, requested discovery and an in camera hearing pursuant to Luttenberger, and requested a Franks hearing to challenge the validity of the warrant. Id. at 592-94.

The Estrada court held that the trial court abused its discretion in denying defendant's request for an in camera hearing on discovery in light of his sworn declaration that he "did not meet and sell or provide cocaine or cocaine base to an individual at a location or to any person at any location during the time period mentioned in [the investigating detective's] affidavit." Id. at 593, 596-97. The court reasoned that the defendant's sworn denial met the Luttenberger test because it "contradict[ed] the affiant's allegations" by "indicat[ing] that the informant, the affiant, and, by inference, the other detectives had fabricated the entire drug transaction scenario which served as the sole basis for the Fourth Amendment justification for the search." Id. at 597. In short, defendant's averment cast in doubt "the entire justification for the search." Id. at 598.

In responding to the concern expressed "that accused drug traffickers will fabricate declarations in order to force the holding of in camera hearings,"

6

the Estrada court indicated that "[t]here is no empirical data that, in other jurisdictions where the Luttenberger rule has been adopted, including here in California, accused drug traffickers have routinely filed false blanket denials of culpability." Ibid. The court further reasoned that significant disincentives exist to deter defendants from abusing the process. Id. at 598-99. The court noted that a defendant would subject himself to a perjury prosecution by making false declarations or giving false testimony and that such sworn false statements, if the defendant were convicted, might be taken into account at sentencing. Ibid.

Other jurisdictions likewise have concluded that a defendant's sworn declarations may be credited at the pre-Franks stage. See, e.g., Commonwealth v. Douzanis, 425 N.E.2d 326, 331 (Mass. 1981) ("[A] judge would not abuse his discretion in deciding to hold . . . a Franks-type hearing where, as here, a defendant under oath on the basis of personal knowledge challenges the truth of material statements attributed to the informant, and he also asserts . . . that there could have been no informant at all."); State v. Casal, 699 P.2d 1234, 1239 (Wash. 1985) ("A more reasonable rule requires the trial court to exercise its discretion to order an in camera hearing where the defendant's affidavit casts a reasonable doubt on the veracity of material

representations made by the affiant.  Corroboration of the defendant's story is helpful, but not necessary.").

## II.

### A.

In the case before us, the majority stated that it would "treat the representations of defendant's counsel as defendant's certification or affidavit," <u>ante</u> at \_\_\_ n.5 (slip op. at 29 n.5), and then concluded that defendant's assertion that he never sold Molly in his home -- an assertion that directly contradicted the averments in the warrant affidavit, <u>ante</u> at \_\_\_ (slip op. at 28) -- "would not meet the standard of plausible justification" necessary for discovery, <u>ante</u> at \_\_\_ (slip op. at 32).  That dismissive attitude toward a defendant's averments, one that blindly accepts the truthfulness of the purported CI and police officer affiant, is squarely at odds with <u>Luttenberger</u> and its progeny.

The majority hinges the right to pre-<u>Franks</u> discovery not on defendant's averment that the sale of Molly to the CI never occurred in his home as represented in the warrant affidavit, but rather on the affidavit's failure to mention that the investigating detective gave the CI "buy money," a failure that the majority characterizes as "likely a clerical mistake."  <u>Ante</u> at \_\_\_ (slip op. at 32).  In the majority's view, even defendant's sworn averment that the

8

sale of Molly to the CI never happened would not entitle him to an in camera review of the laboratory report -- "the evidentiary pillar on which the warrant affidavit was built." See ante at ___ (slip op. at 31). By preemptively excluding potentially relevant information from the scope of discovery, the majority not only departs from the Luttenberger standard, but also evidently expresses a lack of confidence in the remand court to conduct a proper in camera review.

In a finding seemingly inconsistent with Luttenberger, the majority denies potential access to discovery, determining that defendant's request for relevant police reports and call recordings are not "identified with reasonable specificity." Ante at ___ (slip op. at 34). Moreover, without having reviewed the reports or recordings (if they exist), the majority speculates that those "materials would not be amenable to necessary redactions." Ante at ___ (slip op. at 34). The majority does not provide any good explanation for granting in camera review of the laboratory report but not the police reports identified by defendant -- reports that might contradict (or support) the detective's claim in the warrant affidavit that he observed the CI enter defendant's residence. Indeed, Luttenberger itself contemplated that a trial court, under proper circumstances, would conduct an "in camera examination of the police records specified by the defendant." 784 P.2d at 648 (emphasis added).

9

B.

Over forty years ago, the United States Supreme Court in <u>Franks</u>

recognized that the warrant requirement "would be reduced to a nullity if a

police officer was able to use deliberately falsified allegations to demonstrate

probable cause, and, having misled the magistrate, then was able to remain

confident that the ploy was worthwhile."  438 U.S. at 168; <u>accord</u>

<u>Commonwealth v. Ramirez</u>, 617 N.E.2d 983, 990 (Mass. 1993) ("[T]he public

interest in deterring police misconduct requires the trial judge to exercise his

or her discretion to order an in camera hearing where the defendant by

affidavit asserts facts which cast a reasonable doubt on the veracity of material

representations made by the affiant concerning a confidential informant."

(quoting <u>Commonwealth v. Amral</u>, 554 N.E.2d 1189, 1196 (Mass. 1990))).

That warning remains true today.  As <u>Franks</u> indicates, we are not

helpless to deter police misconduct at the warrant stage.

In addressing the issue before us, we should not embrace sweeping

generalities about the truthfulness of police officers or defendants.  I have no

doubt that most police officers are honest.  But the reality is that not all police

officers tell the truth and not all criminal defendants lie.[2]  Courts have a role to

---

[2]  Both courts and journalists have chronicled instances, however infrequent, where police officers have fabricated the existence of a CI to support a search

10

play in ensuring the integrity of the criminal justice process. That role requires that courts exercise oversight of the warrant process and have in place reasonable measures to expose judicially issued warrants that are procured through false affidavits.[3] Such oversight is not inconsistent with the need to protect from disclosure the identity of a CI. However, search warrants issued based on knowing lies or recklessly made false statements are an affront and a threat to our judicial system. Restrictions on a trial court's authority to review in camera relevant discovery, when the validity of a search warrant is properly challenged, will not promote confidence in the warrant process or our system of justice.

warrant. See, e.g., Commonwealth v. Lewin, 542 N.E.2d 275, 278, 284-85 (Mass. 1989) (holding that a finding that a CI existed was "clearly erroneous" based on the sworn repudiation of the CI's existence by three officers and an investigation that revealed thirty-one applications for search warrants by the same officer within a ten-month period relying on the same fictitious CI); St. John Barned-Smith et al., HPD Chief Acevedo Says Narcotics Cop Committed Likely Crime by Lying in Affidavit for Deadly Raid, Houston Chron. (Feb. 15, 2019), https://www.chron.com/news/houston-texas/article/Houston-police-shooting-affidavit-confidential-13620120.php; Jenny Jarvie, Officer Convicted in Coverup, L.A. Times (May 21, 2008), https://www.latimes.com/archives/la-xpm-2008-may-21-na-atlanta21-story.html.

[3] Notably, the representative of the County Prosecutors Association of New Jersey, at oral argument before this Court, stated that even if the warrant affidavit averred that the CI purchased Molly from defendant but the corresponding laboratory report revealed that the substance was really flour, the State would have no obligation to disclose that misrepresentation made to a judge to defendant and presumably to a reviewing court.

11

In our adversarial system, access to discovery -- discovery reasonably related to a contested issue -- levels the playing field, allowing defendants the ability to secure a fair trial. The majority now requires that defendants identify documents with the type of hyper-technical precision that will defeat almost any discovery request. The request for <u>relevant</u> police reports or recordings will not meet the majority's particularity requirement. That is not the <u>Luttenberger</u> standard. <u>Compare</u> 784 P.2d at 646, <u>with</u> <u>ante</u> at ___ (slip op. at 27). In contrast to <u>Luttenberger</u>, the majority has erected an almost insurmountable bar to discovery in cases involving an affidavit based on purported information from a CI or a purported drug sale to a CI. <u>See</u> <u>Luttenberger</u>, 784 P.2d at 646-47 ("[I]n cases involving confidential informants the defendant may be hindered in providing such specifics . . . ."); <u>People v. Lucente</u>, 506 N.E.2d 1269, 1275 (Ill. 1987) ("If an informant's identity -- or very existence -- is unknown, a defendant obviously lacks the very information necessary to determine the source of the false statements.").

Defendant should be given the opportunity of presenting evidence to meet the <u>Luttenberger</u> standard. I would remand and allow the trial court -- without preconditions -- to determine whether defendant has met the threshold for an in camera review of discovery.

IV.

I also would make clear what should be obvious -- that a pre-<u>Franks</u> discovery motion must always be resolved before a court considers whether a defendant is entitled to a <u>Franks</u> hearing.  In the case before us, one trial judge denied his request for a <u>Franks</u> hearing and then later another judge decided that his discovery request was moot.  The absurdity of that scenario speaks for itself.

V.

Because the majority opinion does not faithfully adhere to the <u>Luttenberger</u> standard, I respectfully dissent.